IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KENT MCCARTY DAVIS; CYPRESS )
INTERNATIONAL, INC.,           )
                               )
            Plaintiffs,        )
                               )
        v.                     )        1:16-cv-01086
                               )
DEAN    ZUCCARELLO;   CYPRESS  )
ADVISORS, INC.,                )
                               )
            Defendants.        )

**MEMORANDUM OPINION**

THOMAS D. SCHROEDER, District Judge.

This is a business dispute.  Before the court is the motion

of Defendants Dean Zuccarello and Cypress Advisors, Inc. to dismiss

the amended complaint because a nearly identical action filed by

Defendants exists in the United States District Court for the

District of Colorado or, in the alternative, to dismiss certain

claims alleged in the amended complaint.  (Doc. 19.)  For the

reasons set forth below, the motion to dismiss the action will be

granted unless within fourteen days Plaintiffs elect to transfer

it to the Colorado court.[1]

## I.    BACKGROUND

In the light most favorable to Plaintiffs as non-moving

parties, the allegations of the current complaint and undisputed

_____

[1] Defendants have also moved for expedited consideration.  (Doc. 24.)
In light of the court's disposition, that motion is moot.

facts show the following:

This action arises out of a long-standing business arrangement that eventually soured. In 2000, Plaintiff Kent McCarty Davis and Defendant Zuccarello agreed to provide financial advisory services to – among other types of clients – restaurant owners, multi-unit retail companies, and capital providers serving the restaurant industry. (Doc. 15 ¶ 7.) The parties titled their business the "Cypress Partnership," which Plaintiffs contend (and the court assumes, without deciding, for purposes of the present motion) constituted a partnership; Defendants maintain it was a contractual relationship. The alleged partnership was comprised of Cypress International, Inc., a corporation organized under the laws of Georgia with its principal place of business in North Carolina (Id. ¶ 3), and Cypress Advisors, Inc., a Florida corporation with its principal place of business in Colorado (Id. ¶ 5; Doc. 20 at 2). Davis is the president and sole shareholder of Cypress International. (Doc. 15 ¶ 3) Zuccarello is the president and chief executive officer of Cypress Advisors. (Doc. 22-2 ¶ 2).

On June 20, 2016, Davis informed Zuccarello that he wanted to wind up the Cypress Partnership (Doc. 15 ¶ 139), and the parties sought to negotiate the terms of separation. The week of June 27, Defendants sent Davis a proposed agreement to wrap up their relationship. (Doc. 20-1 at 7-8.) Davis's counsel emailed

Zuccarello on June 29, stated his client's desire "to resolve this matter as quickly as we can," and sought contact information for Zuccarello's counsel. (Id.) The next day, Zuccarello responded and identified his counsel (id.). That same day, he unilaterally terminated Davis from the partnership. (Doc. 15 ¶ 143; Doc. 21 at 8.)

On July 5, Zuccarello's counsel contacted Davis's counsel to inquire of the status of his review of the proposed agreement, noting that Zuccarello "intends to wrap this up as soon as possible." (Doc. 20-1 at 6.) Davis's counsel responded minutes later, stating they were "moving as quickly as we can" and that their "intention [was] that it will remain short and simple." (Id.)

Sometime thereafter but "in early July," Davis's counsel responded with a counter proposal, which Defendants considered and rejected. (Doc. 15 ¶ 174-75.) On July 21, 2016, Defendants' counsel re-confirmed the rejection and sent a revised draft agreement, noting that "a key condition of this proposal is that [Davis and Cypress International, Inc.] must accept the agreement no later than 5PM MT on Saturday, July 23, 2016" and that thereafter Zuccarello would be meeting with certain clients caught up in the dispute. (Doc. 20-1 at 10.) Davis's counsel responded at 2:24 p.m. on July 23 by email, explaining: "[W]e have not been able to circle our team to give you a proper response to your

client's counteroffer.  We will be back in touch with you next week."  (Id. at 20.)

Plaintiffs never responded, however.  Instead, on July 28 – Thursday of that next week – they filed the present action in a North Carolina Superior Court in Moore County.  The action alleged multiple claims: breach of a partnership agreement, breach of a joint venture agreement, breach of fiduciary duty, breach of contract, constructive fraud, and a declaratory judgment as to the existence of a partnership relationship; Plaintiffs also sought various remedies including the imposition of a constructive trust, dissolution, and receivership.[2]

The next day, July 29, 2016, unaware of the filing of the present lawsuit, Cypress Advisors, Inc. filed its own action against Davis and Cypress International, Inc. in the United States District Court for the District of Colorado bearing civil action number 16cv01935 (the "Colorado lawsuit").  (Doc. 20 at 3-4; Doc. 21 at 10.)  A courtesy copy of the lawsuit was emailed to Plaintiffs' counsel herein with the explanation that the action was filed "[a]s we did not receive any further response to The Cypress Group's settlement counterproposal as promised by your July 23, 2016 email to me."  (Doc. 20-1 at 22.)  The Colorado

---

[2] Davis subsequently amended his complaint to add claims for failure to pay wages, interference with prospective economic advantage, and quantum meruit.  (Doc. 15.)

lawsuit initially sought a declaratory judgment as to the parties'
rights, but the complaint has since been amended to add claims for
misappropriation of trade secrets, theft, conversion, interference
with contractual relations, breach of contract, and unjust
enrichment.

On August 26, 2016, Defendants removed the present lawsuit to
this court.  (Doc. 1.)[3]  They filed the instant motion to dismiss
on December 12, arguing that Plaintiffs' claims should be dismissed
in favor of the nearly identical pending action in Colorado.  This
motion mirrors a motion to transfer that Davis had filed in the
Colorado lawsuit in which he urged that court to transfer its
action to this court based on the "first-to-file rule."  (U.S.D.C.
1:16-cv-01935-MSK-MEH, Doc. 34; Doc. 23-1 at 4.)  The Colorado
court issued its ruling on January 17, 2017, declining to transfer
the case and deferring to this court's ruling on the pending motion
to dismiss.  (Doc. 23-1 at 5-6.)  The court ordered discovery to
proceed, however.  (Id.)[4]

## II.  ANALYSIS

When a lawsuit is filed in multiple forums, the Fourth Circuit
generally adheres to the "first-to-file" rule, which holds that

---

[3] The present lawsuit was initially assigned to a different judge and
was re-assigned to the undersigned on April 7, 2017.

[4] On May 17, 2017, Cypress Advisors, Inc. and Zuccarello filed a second
lawsuit in the Colorado federal trial court against Davis and others
based on Davis's formation of a competing firm that is employing a former
associate of Zuccarello's.  (Doc. 26-1.)

"the first suit should have priority, absent the showing of [a] balance of convenience in favor of the second action."  Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594-95 (4th Cir. 2004) (quoting Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974)); Carbide & Carbon Chem. Corp. v. U.S. Indus. Chems., Inc., 140 F.2d 47, 49 (4th Cir. 1944)) (the earlier-filed lawsuit should be allowed to proceed "without interference from" subsequently-filed lawsuits); Quesenberry v. Volvo Group N. Am., Inc., No. 1:09cv22, 2009 WL 648658, at *2-3 (W.D. Va. March 10, 2009) ("[T]he 'first-to-file' rule supports dismissing, staying or transferring [an] action . . . ."). Multiple lawsuits are subject to the first-to-file rule if "the same factual issues" provide the basis for each suit. Allied-Gen. Nuclear Serv's v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982).

Courts have applied a three-factor test for determining whether multiple cases are subject to the first-to-file rule, considering (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues being raised. Remington Arms. Co., Inc. v. Alliant Techsystems, Inc., No. 1:03CV1051, 2004 WL 444574, *2 (M.D.N.C. Feb. 25, 2004) (internal citations omitted). Here, the two actions were filed one day apart. The claims are similar and in some cases identical, revolving around the parties' rights in dissolving the

partnership.  In the present action, Davis claims he is entitled

to profit distributions that were wrongfully withheld from him and

seeks, among other things, a declaratory judgment as to his rights.

In the Colorado lawsuit, Cypress Advisors, Inc. seeks a declaratory

judgment that Davis served as an independent contractor to it and

has no interest in any future engagement agreements with its

clients.  (Doc. 20-2 at 10-11.)  The parties do not dispute that

the actions are substantially the same and involve essentially the

same parties.[5]  (Doc. 20 at 5-7; Doc. 23-1 at 5.)  Indeed, since

this motion was filed, Davis has filed his claims as counterclaims

in the Colorado lawsuit.  (Doc. 25 at 3 (referencing docket in

U.S.D.C. 1:16-cv-01935-MSK-MEH, Doc. 60).)  The first-to-file rule

therefore applies.

However, application of the rule is not mandatory.  As the

Fourth Circuit has noted, "this Circuit has no unyielding 'first-

to-file' rule."  CACI Intern., Inc. v. Pentagen Technologies

Int'l., Nos. 94-2058, 94-2220, 1995 WL 679952, at *6 (4th Cir.

1995) (unpublished).  Indeed, courts have established certain

exceptions to the first-to-file rule.  The Fourth Circuit has

sanctioned an exception when the "balance of convenience" weighs

---

[5] Davis's action includes Zuccarello as a defendant, whereas the Colorado
lawsuit involves Cypress Advisors as plaintiff and Zuccarello as a
counterclaim-defendant.  Regardless, the addition of Zuccarello in a
different capacity in this suit does not alter the gravamen of the
dispute.  Family Dollar Stores, Inc. v. Overseas Direct Imp. Co., Case
No. 3:10CV278, 2011 WL 148264, at *3 (W.D.N.C. Jan. 18, 2011).

in favor of the second forum, but has not expressly identified other exceptions. Learning Network, Inc. v. Discovery Communications, Inc., 11 F. App'x. 297, 301 n.2 (4th Cir. 2001). District courts in the Fourth Circuit, however, have recognized "special circumstances" that allow a court to depart from the first-to-file rule. Remington Arms Co., 2004 WL 444574, at *2. These circumstances include when the action was filed in the midst of settlement negotiations. Id. (citing EMC Corp. v. Norand Corp., 89 F.3d 807, 814 (Fed. Cir. 1996)). Or, when the action was filed with notice that the other party is about to file. Id. at *3 (citing Anheuser–Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999)); Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc., 294 F. Supp. 2d 823, 828 (N.D.W. Va. 2003); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000) (defining an improper anticipatory filing as "one made under the apparent threat of a presumed adversary filing the mirror image of that suit") (citation omitted); see also Myles Lumber Co. v. CNA Fin. Corp., 233 F.3d 821, 824 (4th Cir. 2000) (noting that one factor for determining when to decline to assert jurisdiction in a declaratory judgment action is "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'").

All three of these exceptions are implicated in this case.

First, Davis filed this action in a race to the courthouse while giving the impression that he intended to pursue ongoing settlement discussions.    When  Defendants  sent  Davis's  counsel  a  draft settlement agreement on July 21, 2016, they set a deadline of July 23.  Davis's counsel responded on July 23 – a Saturday – explaining that he had yet to be able to gather his decision-makers and would provide  a  "proper  response"  the  "next  week."    (Doc.  20-1  at  20 ("[W]e have not been able to circle our team to give you a proper response to your client's counteroffer.  We will be back in touch with you next week.").)   Yet, reminiscent of the scorpion and the frog,  instead  of  responding  to  the  proposal  as  promised,  Davis filed this lawsuit on Thursday, before the end of that "next week." Davis  argues  that  by  the  time  he  filed  this  action,  settlement discussions  had  ceased  because  he  did  not  accept  the  Defendants' offer before the end of the day on July 23.   (Doc. 21 at 11-12.) But the response by Davis's counsel – that he would "give a proper response"  within  the  next  week  –  reasonably  signaled  that  a settlement  could  still  be  reached.    Without  forewarning,  Davis filed this action.

By any measure, Davis's filing was anticipatory.  Defendants, by  setting  a  48-hour  deadline  and  noting  Zuccarello's  planned meetings the next week, had made clear their desire not to delay further.   Remington Arms, 2004 WL 444574, at *4 (stating that "[e]ven  without  a  specific  date,  giving  Remington  one  week  to

respond certainly gave Remington some inkling of when a suit might be filed."). Rather than respond – even if to communicate a rejection, as Defendants were led to expect, Davis filed the present action the day before the expiration of the promised response period. Id. at *14-15 (filing one day prior to requested response date was an improper filing); Family Dollar, 2011 WL 148264, at *4 ("the fact that [plaintiff] filed suit in the midst of settlement negotiations and two days before a settlement meeting was expected to take place suggests that this was a race to the courthouse"). Given the nearly simultaneous filings, it is unlikely Plaintiffs would have beaten Defendants to the courthouse had Defendants not been lulled into standing down in deference to Davis's representation he would respond. No doubt at some point Davis subjectively concluded that the deal was dead, and the court need not find that Davis or his counsel purposefully misled Defendants on July 23. It is enough to say, as the Family Dollar court cautioned, that abiding by the first-to-file rule in this circumstance would deter parties from communicating and thus incentivize races to the courthouse as a means for forum shopping. Id. at *13; see also Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. Oct. 29, 2003); Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996).

Finally, the balance of convenience weighs in favor of dismissing Plaintiffs' claims in light of the Colorado lawsuit.

Courts generally apply several factors – drawn from case law relating to motions to change of venue pursuant to 28 U.S.C. § 1404(a) - when deciding whether this exception to the first-to-file rule applies: (1) plaintiff's choice of forum, (2) residence of the parties, (3) access to evidence, (4) availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, (5) possibility of a view by the jury, (6) enforceability of a judgment, (7) relative advantages and obstacles to a fair trial, (8) practical issues affecting trial expediency and efficiency, (9) relative court congestion between the districts, (10) interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and (11) avoidance of conflict of laws. Nutrition & Fitness, 264 F. Supp. 2d at 362; US Airways, Inc. v. US Airline Pilots Ass'n, No. 3:11-cv-371-RJC-DCK, 2011 WL 3627698, at *3 (W.D.N.C. Aug. 17, 2011). The factors are accorded different weights based on the court's discretion. Nutrition & Fitness, 264 F. Supp. 2d at 362.

The first factor certainly counsels against dismissal. But in light of the anticipatory nature of his filing, Davis's choice of forum carries significantly less weight. And while most of the other factors fail to clearly favor either party, factors three, four, seven, and eight weigh in favor of Colorado as a forum. It

11

appears from the parties' briefs that the alleged partnership's employees, who are likely to serve as witnesses, reside in Colorado. Davis conceded as much in his response. (Doc. 21 at 15-16.) In addition, the partnership's banking, bookkeeping, and payroll operations occur in Colorado. (Doc. 15 ¶ 34.) This may explain why as of April Davis already noticed the depositions of five individuals in Colorado. (Doc. 25 at 5.) Moreover, the Colorado lawsuit concerns a broader set of claims than this action, comprising both Defendants' claims and Davis's claims (which have been filed as counterclaims in the Colorado action). In the present action, Defendants have yet to file any claims as counterclaims. As a result, dismissing this action in order to allow the Colorado lawsuit to proceed would ensure a quicker and fairer resolution, as opposed to litigation that is inefficient and piecemeal.

Resolving the parties' dispute as part of the Colorado lawsuit is also the most expedient option, as discovery and pretrial litigation have been occurring since January. The Colorado court has conducted a scheduling conference (U.S.D.C. 1:16-cv-01935-MSK-MEH, Doc. 46), issued a trial preparation order (U.S.D.C. 1:16-cv-01935-MSK-MEH, Doc. 47), and published a scheduling order (U.S.D.C. 1:16-cv-01935-MSK-MEH, Doc. 48). Furthermore, Zuccarello and Cypress Advisors currently have a partial motion to dismiss Davis's counterclaims pending before the Colorado court.

(U.S.D.C. 1:16-cv-01935-MSK-MEH, Doc. 74.)   Denying Defendants'

motion to dismiss and allowing this action to proceed, on the other

hand, would likely repeat much of the process already undertaken

in Colorado.

Two final considerations.  There is no indication that the

Colorado court can resolve the case in any less time than this

court – indeed, quite the opposite, given that court's head start

on the litigation.  And while Davis argues that this court will be

more familiar with his claims under North Carolina law, there is

no indication that, even if that law applies (a question this court

need not resolve),[6] there will be any unique questions that the

Colorado court will be any less able to handle.

For all these reasons, Defendants' motion to dismiss (Doc.

19) should be granted in favor of the action in Colorado.  However,

insofar as neither party has addressed whether a dismissal may

adversely affect any of Plaintiffs' claims because of any statute

of limitations and because Plaintiffs have not expressly sought

transfer in lieu of dismissal, the court will withhold entering

any order of dismissal for fourteen days in the event that

Plaintiffs file a notice of an election to have the court transfer

---

[6] Plaintiffs argue that their claims arise under North Carolina law,
including its partnership act.  Defendants contend otherwise, arguing
that Colorado law applies, and point out that Davis resided in Georgia,
where Cypress International, Inc. was incorporated and is now dissolved,
when the parties' business relationship arose.  (Doc. 22 at 7, 9.)

the action to the Colorado court.  In the absence of such notice, the court will dismiss the action without prejudice.

**III.  CONCLUSION**

For the reasons stated,

Defendants' motion to dismiss (Doc. 19) will be granted without prejudice in fourteen days unless within that time Plaintiffs file a notice of an election to have this case transferred to the United States District Court for the District of Colorado where the companion action is proceeding under docket number 1:16-cv-01935-MSK-MEH.  In any event, the court will not reach Defendants' alternative motions to dismiss on the merits, which will be denied without prejudice as moot.

   /s/   Thomas D. Schroeder
United States District Judge

June 23, 2017